# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:05MJ218

| | |
|---|---|
| IN THE MATTER OF THE SEARCH ) | |
| OF SWANNANOA VALLEY FAMILY ) | |
| MEDICINE, DR. JOHN KELLY, 2296 ) | ORDER |
| U.S. HIGHWAY 70, SWANNANOA, ) | |
| NORTH CAROLINA. ) | |
| _____ ) | |

**THIS MATTER** is before the court upon petitioner John Jay Kelly, M.D.'s Motion to Strike/Cancel Order and Lis Pendens (#18), petitioner's supporting brief (#22), the government's responsive brief (#19), the government's "Motion to Dismiss Motion to Strike Lis Pendens" (#25), and Dr. Kelly's Response to Motion of the United States to Reconsider (#28). After hearing the arguments of counsel on March 8, 2007, the court announced its decision to strike the *lis pendens* from the bench, and the government entered its oral Motion to Stay Decision and followed such motion with its Motion[s] for Reconsideration of Order (#s 26 & 27) filed on March 9, 2007.

In the Motion for Reconsideration, the government addresses this court's concern, expressed at the conclusion of the hearing, that the *lis pendens* issued in September 2005 were not timely followed up with a civil action. The government has explained that the *lis pendens* issued by this court *is* the equivalent of the attachment issued in state court, which is an alternative basis for issuance of a *lis pendens*. The government's Motion for Reconsideration has lead the court to not

only reconsider, but to conduct a complete review of the law surrounding lis pendens issued in the context of yet-to-be-filed forfeiture actions. For the reasons that follow, the court will reconsider its oral Order and deny petitioner's Motion to Strike.

## FINDINGS AND CONCLUSIONS

### I. Introduction

At issue is whether a *lis pendens* issued by the undersigned on September 16, 2005, and later filed on November 2, 2005, by the government with the Clerk of Superior Court for Buncombe County, North Carolina, should be stricken. For cause, petitioner Dr. John Jay Kelly, M.D., has shown the court that notice of lis pendens concerning his business property has remained on the public record for 485 days without the government commencing either a civil or criminal action. For the reasons that follow, this court's finding of probable cause and issuance of *lis pendens* on September 16, 2005, is as a matter of North Carolina and federal law an attachment satisfying the North Carolina *lis pendens* statute and cannot, as a matter of federal law, be set aside based on the government's delay in bringing a forfeiture action, so long as that action is brought within the period of limitations.

### II. Factual Background

While documents remain under seal in this matter, the court hereby temporarily

lifts such seal in this case for the limited purpose of providing a factual context.[1] On July 22, 2005, Honorable Lacy H. Thornburg, United States District Judge, issued a search warrant based upon an application presented by Special Agent Mark M. Aysta, Federal Bureau of Investigation. Implicit in the district court's issuance of the warrant was a finding that probable cause existed to believe that Dr. Kelly had been unlawfully distributing and dispensing controlled substances from his medical facility and that evidence of such alleged offense would likely be found therein. The search warrant issued by the court authorized a search of the business of Swannanoa Valley Family Medicine located in Swannanoa, North Carolina. The search warrant further authorized the seizure of various medical records, patient records, financial records and other documents relating to the medical practice of Dr. John J. Kelly, M.D., who operates his solo medical practice as Swannanoa Valley Family Medicine. On July 26, 2005 the search warrant was executed and numerous files containing records of treatment of patients, financial documents, computers and other items were taken into custody by the FBI. These items were secured in the Asheville, North Carolina office of the FBI for review.

On August 2, 2005, Dr. Kelly, by and through counsel, filed a motion entitled

---

[1] The court inquired at the hearing whether the matter should be sealed and counsel for all parties indicated that it should not be sealed.

"Motion to Return or Provide Copies of Seized Records, To Return Property Unrelated of Criminal Investigation and To Unseal Affidavit in Support of Search Warrant." On October 12, 2005, Dr. Kelly, by and through substitute counsel, filed a second motion entitled "Amended Motion for Return of Patient's Medical Records and Other Properties." The government responded on October 18, 2005, again asserting and setting forth that a procedure had been developed so that copies could be made of the various records seized from Swannanoa Valley Family Medicine. This court denied the revised motion, but instituted a protocol for Dr. Kelly to access records so as to allow him to continue to provide services to his patients.

During the pendency of the petitioner's Motion for Return of Seized Property, the government presented to the undesigned on September 16, 2005, the second affidavit of Special Agent Aysta, which incorporated by reference the affidavit he submitted to the district court in support of the July search warrant application. In pertinent part, Special Agent Aysta averred in the new affidavit that

> John J. Kelly, M.D., is the current owner of the real property ("the commercial property"), a strip mall, which contains all three premises . . . that were searched.

Docket Entry 11, at ¶ 4. After detailing the results of the investigation up to that point, Agent Aysta averred in relevant part, as follows:

there is probable cause to conclude that the commercial property has

been used to facilitate the illegal distribution and dispensing of controlled substances . . . and is subject to civil or criminal forfeiture . . . and the government is entitled to record a lis pendens to give public notice of the government's forfeiture interest and potential civil and/or criminal forfeiture claim against the property.

Id., at ¶ 10.[2]

Based on such affidavit and application, the court entered an "Order and *Lis Pendens*," which made a probable cause finding, directed such Order and *Lis Pendens* to be filed "forthwith," and provided that such was being entered not only to provide the public with notice of the government's interest, but "so that the United States may initiate action to adjudicate forfeiture of the property . . . ." Docket Entry 9, at 2. The *lis pendens* directed that such notice be filed in the Grantor Index under Dr. Kelly's name and that of his wife; there was, however, no direction to file such notice under the corporate name in which the property may be actually titled.[3]

### III.  Law Applicable to *Lis Pendens*

---

[2]  Allegations were also made concerning the Kelly family home, to the effect that such property constituted substitute property for the proceeds of illegal distribution and dispensing of controlled substances. Id., at ¶ 11. Dr. Kelly has not moved to strike the notice of lis pendens that affects his home, and will, therefore, not be further discussed.

[3]  The proposed Order and *Lis Pendens* was prepared for the court by the government. Because the matter is not before this court, the undersigned makes no finding as to whether the lis pendens issued was effective to give notice as to the government's interest in any property held by any corporate entity.

In order to fully understand the interplay between federal forfeiture law and state law governing transfers of real property, it is important to understand the source of the government's putative title to real property that is either used to facilitate an unlawful drug transaction or represents proceeds of such unlawful conduct.

> All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section.

18 U.S.C. § 981(f).

As a matter of federal law, title in petitioner's commercial property vested in the United States of America upon Dr. Kelly's use of his commercial property to facilitate unlawful drug transactions, an event which the affidavits indicate occurred in 2003. Short of completion of a civil forfeiture proceeding, where a claimant could potentially get his property back, the issue becomes how can the government provide notice to the world that title is not as it may appear in the Register of Deeds Office and that it is in fact the owner of the real property. This is particularly important for the public which may wish to buy the property or loan money based on a security interest in such property. This issue was addressed squarely by the Court of Appeals for the Fourth Circuit, as follows:

> In *United States v. Stowell*, 133 U.S. 1, 16-17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890), the Supreme Court held that when property is subject to forfeiture upon commission of a certain illegal act, title vests

6

> in the government at the time of the act's occurrence-judicial condemnation serves only to formalize the transfer of ownership. As a result, no third party can acquire a legally valid interest in the property, from anyone other than the government, after the illegal act takes place. The purpose of this rule was to prevent the offender from alienating the property prior to seizure and condemnation, and thereby escaping some of the consequences of his wrongdoing. Id. at 17-18, 10 S.Ct. at 247-48.

In re Metmor Financial, Inc., 819 F.2d 446, 448 (4th Cir. 1987).

Applying the law to the facts presented in this case, the law is clear that title to petitioner's commercial property vested in the United States of America at the time the alleged offense occurred, which may well be as early as 2003. 18 U.S.C. § 981(f), Because title vests when the unlawful act occurred, the civil or criminal forfeiture proceeding, which was initiated in February 2007, serves only to formalize the transfer. In re Metmor Financial, Inc., supra.

The next step in the analysis is to determine how the government gives notice to the world of its vested title to petitioner's commercial property between the time when the unlawful act occurs and when the civil or criminal forfeiture proceeding is brought. It is at this point that the federal law which vests title to petitioner's commercial property in the United States of America intersects with state law, which exclusively governs the orderly sale and transfer of interests in real property. The traffic cop at this intersection is 28 U.S.C. § 1964, which provides, as follows:

> Where the law of a State requires a notice of an action concerning real

> property pending in a court of the State to be registered, recorded, docketed, or indexed in a particular manner, or in a certain office or county or parish in order to give constructive notice of the action as it relates to the real property, and such law authorizes a notice of an action concerning real property pending in a United States district court to be registered, recorded, docketed, or indexed in the same manner, or in the same place, those requirements of the State law must be complied with in order to give constructive notice of such an action pending in a United States district court as it relates to real property in such State.

28 U.S.C. § 1964. Thus, while the government had a vested interest in petitioner's commercial property perhaps as early as 2003, Section 1964 makes it clear that to perfect such interest the United States must comply with state law concerning the filing of a notice of *lis pendens*. Id. This compliance with state law, which is literally a "notice of pending litigation" presents the court with its next inquiry, which is how to properly issue a *lis pendens* when no litigation is pending.

Fortunately, this court has addressed this issue. Where the government seeks a *lis pendens* based on real property in which it has a vested interest and the civil or criminal forfeiture action has not yet been commenced, this court has long held that the government may seek issuance of a *lis pendens* based on the attachment provision of the North Carolina General Statutes. In re Certain Real Property Located at Lot 8, Block 4 of Summit Hills, Charlotte, N.C., 763 F.Supp. 150, 151 (W.D.N.C. 1991); N.C.Gen.Stat. § 1-116(c)(2). Subsection (c)(2) provides that "[n]otice of pending litigation may be filed . . . [a]t any time after real property has been attached." In

Summit Hills, supra, Robert D. Potter, United States District Judge, held that

> Because the Government's interest in a property relates back to the time of an illegal act, the Court believes that the property became attached pursuant to subsection (c)(2) of N.C.Gen.Stat. § 1-116 prior to or shortly after the Government filed the notice of *lis pendens*. In other words, the Government's interest in the property vested as soon as the property was used in an illegal manner. Thus, the notice of lis pendens is valid and necessary to place the world on notice of the Government's interest in the property. As one North Carolina court has noted, "N.C.Gen.Stat. § 1-116(a) (1983) makes clear that if neither a foreclosure nor attachment order are involved, a *lis pendens* may be filed only where a legitimate interest in real property may lie". *See Zinn v. Walker*, 87 N.C.App. 325, 361 S.E.2d 314, 337 (1987) (emphasis added), *review denied*, 321 N.C. 747, 366 S.E.2d 871 (1988). Given the well established nature of the relation back doctrine, the Court believes that the Government has a legitimate interest in the real property at issue in this case, and that the notice of lis pendens is valid and should not be stricken.

Id., at 151-152 (emphasis added). Thus, title vested when the unlawful act allegedly occurred, 18 U.S.C. § 981(f), and attachment occurred not later than when the government filed the notice of *lis pendens* issued by this court. Summit Hills, supra.

With the *lis pendens* having been properly sought and issued in accordance with law, the next issue is whether a 485 day or greater delay in the government bringing its civil forfeiture action is cause for the court striking the *lis pendens*. As a general rule, "[a]n attachment lien continues until judgment in the suit has been entered and docketed, when it merges in the judgment lien." CJS ATTACHMENT § 272. In his motion to strike, petitioner raises constitutional concerns in the nature

9

of due process as well as unlawful seizure. Petitioner further argues that law of this district requires the court to look at whether the lis pendens has been in place for a reasonable time. The court will address each one of these concerns.

Petitioner argues that in delaying bringing a civil or criminal case for more than 485 days, the government has unnecessarily burdened petitioner's use and enjoyment of real property. Petitioner claims that such action violates his fifth amendment due process rights and that the *lis pendens* should, therefore, be stricken. The United States Supreme Court has, however, long held that prelitigation liens on real property, such as attachments, do not reach constitutional concerns. In <u>Coffin Bros. & Co. V. Bennett</u>, 277 U.S. 29 (1928), Justice Oliver Wendell Holmes opined, as follows:

> The objection urged by the plaintiffs in error seems to be that this section purports to authorize an execution and the creation of a lien at the beginning, before and without any judicial proceeding.
> * * *
> A reasonable opportunity to be heard and to present the defense is given and if a defense is presented the execution is the result of a trial in court. The Fourteenth Amendment is not concerned with the form.
> * * *
> As to the lien, nothing is more common than to allow parties alleging themselves to be creditors to establish in advance by attachment a lien dependent for its effect upon the result of the suit.

<u>Id.</u>, at 31. As the law concerning procedural due process expanded in the later part of the 20th Century, the Supreme Court did not abandon its reasoning in <u>Coffin Bros.</u>, <u>supra</u>, but instead looked closer at the process, finding the use of prelitigation liens

proper where

> the initial hardship to the debtor is limited, the seller [the lien holder] has a strong interest, the process proceeds under judicial supervision and management, and the prevailing party is protected against all loss.

Mitchell v. W. T. Grant Co., 416 U.S. 600, 618-619 (1974). All of those elements are certainly present in this case: petitioner still enjoys most uses as well as possession of his commercial property; the United States has a strong interest in the property inasmuch as it is, by law, vested in title to such property; judicial supervision is available as seen in this review; and if petitioner is ultimately the prevailing party, he may seek fees and costs under certain circumstances under the Equal Access to Justice Act. 28 U.S.C. § 2412. Petitioner has a further potential remedy in 28, United States Code, Section 2409a, to seek to quiet title to property in which the government claims an interest.[4] Thus, due process concerns do not provide a basis for striking the *lis pendens*.

Petitioner also raises fourth amendment concerns in support of his Motion to Strike, Docket Entry 22, at 13, arguing that the *lis pendens* has the same effect as a seizure of his business. Congress has, however, determined that the filing of a *lis pendens* does not amount to a "seizure" of real property. Enacted in response to

---

[4] This should not be construed as in any way recommending that such an action should be filed or would withstand review by the district court under Fed.R.Civ.P. 12.

similar due process concerns raised by the Supreme Court in <u>United States v. James Daniel Good Real Property</u>, 510 U.S. 43 (1993), Congress provided as follows:

> The filing of a *lis pendens* and the execution of a writ of entry for the purpose of conducting an inspection and inventory of the property shall not be considered a seizure under this subsection.

18 U.S.C. § 985(b)(2). While the court is not unsympathetic to petitioner's argument, and well understands that a lis pendens prevents the use of such property as collateral for making improvements to the business or even securing a loan to make payroll, Congress has provided otherwise.

Finally, the court has carefully considered Judge Potter's footnote to his decision in <u>Summit Hills</u>, <u>supra</u>, which provided as follows:

> The Court's order in this case is dependent on the Government having shown a reasonable connection between the properties and illegal activities, as well as the notice having only encumbered the property for a reasonable length of time. In the event that the Government was unable to make such a showing, the Court would be reluctant to allow the notice to remain on the property.

<u>Id.</u>, at 152, f.n.1. The issue of what amounted to a reasonable length of time was not, however, before the court in <u>Summit Hills</u>; while such footnote is as the government contends *dicta*, Judge Potter's concerns with timeliness deserve closer consideration. Certainly, timeliness and getting on with matters is at the heart of petitioner's motion as well as this court's concern. The cases cited by petitioner at page 12 of his brief

concern delay in the prosecution of underlying actions for which a notice of *lis pendens* had been issued. Under Summit Hills, however, the *lis pendens* is the attachment allowed by Section 1-116(c)(2) of the North Carolina General Statute, which is a substitute for the action. Even if those cases could be considered persuasive, it appears that the shortest period the court found to support striking a *lis pendens* was two years, a milestone which this matter has not reached.

In any event, the undersigned believes in determining what would have been reasonable in Summit Hills had that issue been presented, the district court would have been guided in such inquiry by the nature of the alleged offense and the degree of difficulty the investigation would entail. For example, investigation of the use of a home or business as a crack house or counting house would be very different in nature from the use of a home or professional office to unlawfully distribute controlled substances through the use of prescriptions and doctoring medical files to justify the prescriptions or, for that matter, any upcoding. In this case, it appears that the government has been attempting to investigate alleged unlawful distribution and disbursing of controlled substances by a medical doctor as well as upcoding through use of his medical practice. Special Agent Aysta has averred that reading and reviewing the voluminous medical records is time consuming and has required the FBI to employ experts to assist in such task. While this court is concerned with the

delay, it does not appear to be an unjustifiable delay. Further, the court has closely searched the reported federal cases for any decision which determined that a notice of *lis pendens* should be stricken when the government delayed bringing either a civil or a criminal forfeiture action. The case cited by Judge Potter in his footnote, <u>United States v. A Fee Simple Parcel of Real Property Situated in the City of Bal Harbour, State of Florida</u>, 650 F.Supp. 1534 (E.D.La.1987), involved a striking of the *lis pendens* not because of governmental delay, but because the government had made no showing that the claimant's home was subject to forfeiture. In this case, the government has made a probable cause showing that petitioner's commercial property is subject to forfeiture. In <u>Good</u>, <u>supra</u>, the Supreme Court cautioned that courts should be cautious when parties seek the remedy of dismissal in a forfeiture action based on prelitigation delay:

> We have long recognized that "many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them ... do not limit their power or render its exercise in disregard of the requisitions ineffectual." We have held that if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.

<u>Id.</u>, at 63-64 (citations omitted).[5] The statute of limitations found in 19 U.S.C. § 1621 also applies in drug forfeiture cases, requiring the government to commence its

---

[5] This portion of the <u>Good</u> decision was not abrogated by Congress.

forfeiture action

> within five years after the time when the alleged offense was discovered or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later.

19 U.S.C. § 1621; see also 21 U.S.C. § 881(d) (incorporating the customs law statutes of limitations for use in drug forfeiture cases); United States v. Carrell, 252 F.3d 1193, 1205-07 (11th Cir.2001); United States v. $890,718 in U.S. Currency, 433 F.Supp.2d 635, 645 (M.D.N.C. 2006). In determining that a forfeiture action should not be dismissed for failure to comply with internal timing requirements, the Supreme Court concluded that

> [b]ecause § 1621 contains a statute of limitations-the usual legal protection against stale claims-we doubt Congress intended to require dismissal of a forfeiture action for noncompliance with the internal timing requirements of §§ 1602-1604.

Good, supra, at 65. To strike a notice of *lis pendens* due to delay on the part of the investigating agency or the United States Attorney would be a coercive sanction, inasmuch as without such notice in place, the government could potentially lose whatever interest it may have making the bringing of a civil or criminal forfeiture action an exercise in futility. The court respectfully notes that unlike this court, Judge Potter did not have the Good decision to follow, inasmuch as it was issued some two years after he issued his decision in Summit Hills. Thus, the court finds that once

probable cause has been found by the court and a lis pendens issues and is filed, the court will not issue the coercive sanction of striking the notice of *lis pendens* as long as the government files its action within the statute of limitations period as determined by Congress.

### ORDER

**IT IS, THEREFORE, ORDERED** that petitioner John Jay Kelly, M.D.'s Motion to Strike/Cancel Order and Lis Pendens (#18) is **DENIED,** the government's "Motion to Dismiss Motion to Strike Lis Pendens" (#25) is **DENIED** as moot, the government's oral Motion to Stay Decision is **DENIED** as moot, and the governments' Motion[s] for Reconsideration of Order (#s 26 & 27) filed on March 9, 2007 are **GRANTED,** and the oral Order of March 8, 2007, in this matter is stricken.

Signed: April 3, 2007

*/s/ Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge